VALENTINE PRUIT and JOHN MARTIN *vs.* SQUIRE LOWRY.

*Error from Madison Circuit Court*—Before the Hon. JOHN WHITE.

————

Where A. sells property to B. and B. sells to C. and the property is levied on and sold to D. under an execution subsisting against A. in a suit brought by C. to recover from D.—A. is not a competent witness for C.

A levy and sale under an execution by one constable for another, which levy and sale are recognised and returned by the latter—not void on the ground of false return.

This was trespass in the Court below, against Pruit and Martin by Lowry, for forcibly taking a negro slave. On the plea of not guilty and issue, there was verdict and judgment for the plaintiff. In the trial of this cause the plaintiff produced in evidence a bill of sale from one Cottrell to Townsend for sundry negroes, including the one in question. In order to explain circumstances connected with the consideration between Cottrell and Townsend, the plaintiff Lowry produced Cottrell as a witness. His competency was objected to by the defendants, on the ground of interest. The Court held Cottrell a competent witness. It appeared from the record, that Pruit claimed title to the slave under a sale made by a constable, in pursusnce of an execution levied on her at the suit of Pruit. Pruit held several judgments against Cottrell. The levy and sale had been made by one Milam, as Martin's bailiff, and on this levy, under Pruit's execution, Martin justified. The Court charged the jury, that if the defendants relied on the judgments, executions levy and sale, and they believed the sale was made without the direction and cognizance of Martin, who made the return—the same

being false—Pruit could neither take title, nor Martin justi-. fy. The Court further charged, that it was necessary that the return of sale should be in writing on, or attached to the. execution. To these points, and to the admission of Cottrell's testimony, the defendants excepted.

In the course of the trial the defendant's counsel moved the Court to instruct the jury, that if they found out that Pruit had not made out a title under his purchase, yet, if they believed the sale from Cottrell to Townsend was fraudulent, as against Cottrell's creditors, and particularly as to Pruit, then they should find, that as no title passed from Townsend to Lowry, and he having failed to make out a title to the slave in question, the defendant was entitled to a verdict. The Court declined to give this charge, but instructed the jury, that however fraudulent the sale from Cottrell to Townsend may have been—if they believed the slave to have been in possession of the plaintiff at the time of levy, he was entitled to recover on that possession—that if they found that the judgments and executions, and the sale under them, vested no title in Pruit, and formed no justification for Martin—then it was not important for the plaintiff to show a regular sale to himself, but sufficient to prove a possession of the property. To all these positions of the Court, the defendant excepted, and now assigned them as error.

HUTCHISON, for Appellants.

R. Cottrell was interested to support the title, if any, he passed to Townsend, under whom Lowry claimed. The Court below supposed he was no more interested than if this had been a controversy to try the right betwixt Pruit as the creditor of Cottrell, and purchaser under his judgments, against him on the one hand, and Lowry the claimant under his vendee—when if Pruit had failed, the slave could not have been sold toward satisfaction of his executions, and his judgments would have remained unpaid—and where if he had succeeded, Lowry would have went on the supposed warranty of

Townsend, and he on that of Cottrell.  Then indeed, Cot- <span>Pruit & Martin<br>vs.<br>Lowry.</span>
trell would have stood equipoised in interest.  Not so here :
the slave was sold, and the product, *pro tanto*, satisfied Pruit.
Whether he succeeded or not in this case, the credit returned
on the executions would remain.   Cottrell's interest, there-
fore was solely in favor of the title  he passed to Townsend ;
and the interest though not immediate, was certain.   But the
policy of law did not permit him either to support or impeach
the sale he had made.   In the transfer of a note  by delivery,
there is an implied warranty that it is genuine, and the trans-
ferror cannot testify to sustain its validity, nor to impugn it—
15 *John.* 240—16 *John.* 201.   So an indorser—3 *John.* 185—
2 *John.* 165—14 *John.* 270.   If indeed, a payee and indor-
sor be called to testify certainly and only against his own di-
rect and immediate interest, and do not himself  object, he
may be sworn :  but this is not calling him to  validate the in-
strument he endorsed—1 *Stew.* 199.   A vendor or alienor of
realty may not testify in favor of the title he communicated—
2 *John.* 394—6 *John.* 523.   Where the bailee of  a chattel
sues a stranger,  the bailor  cannot testify as to his general
property—*Chesley* vs. *St. Clair, Adams's Rep.* 192.   Because
too, in the sale of a chattel or slave, there is an actual or im-
plied warranty of title,  the vendor  may  not give evidence to
sustain that title—6 *John.* 7—2 *Har. & G.* 176—7 *Har. &
J.* 458—5 *Am. D.* 250.   Nor can the declarations of a ven-
dor made after his sale, be proved,  to show the sale a sham:
1 *Stew.* 198.   Where, indeed, the vendor sold to  both plain-
tiff and defendant, being  biased equally both ways, he was ad-
mitted—1 *Stew.* 419.   Cottrell's evidence was plainly mate-
rial, and by being illegally received, the judgment  must be
reversed.

The Court erred in instructing the jury that if they believ-
ed the sale of the slave was made by Melam, without the im-
mediate direction and sanction of Martin,  the return of sale
on the execution was false,  by being made by Martin, and
Pruit acquired no title,  and Martin could not justify.  Me-

Pruit & Martin
vs.
Lowry.

lam was an officer of equal grade ; the executions were delivered to him with Martin's request that he should make the sale—he received the executions—caused the sale to be made before a large crowd at the court house, and there is no circumstance of unfairness. Martin by making the return recognised his act. If Melam acted as bailiff, it was well—1 *Salk.* 265—2 *id.* 589—2 *T. R.* 156, 157—7 *Comyn's Dig.* 287—*Hunt* v. *Burrell*, 15 *John.* 137. Being of equal grade, the special property of Martin passed to him, and his sale passed the ownership to the purchaser, who cannot be affected by the irregularity of a return subsequent to his purchase, if the return were defective : it was the sale that passed the right—10 *John.* 381—13 *John.* 97—5 *Am. D.* 262.

Then as to the refusal of the court to allow Lowry's title to be questioned, and the instructions on that score, the principles applied contravene the plainest dictates of reason and justice. In trespass, indeed, a plaintiff may rely on possession or constructive possession, only as against a wrong doer, having no title. That action is based on the possession, whilst trover rests on the ownership. But when he, as here, evolves all his evidence of title, and relies on it, and not on possession merely, it is surely with the defendant to interrogate the witnesses, to object to the fraud manifested, and to give further proof on that score. The plaintiff thus puts himself in the predicament of a physician, who is sued for the injury he has inflicted on his patient, who shows his diploma, and attempts to prove his professional skill : the other party may show he is an educated *dancing master!*—5 *Day*, 260. Where a plaintiff does not attempt himself to show title, a defendant, who shows none himself, cannot introduce the title of his adversary for criticism and reprehension—because it is not put in issue, and because the plaintiff would thus be unprepared to meet the objections : but when he himself introduces his evidences of ownership, he must abide the consequences.

HOPKINS, *contra.*—14 *John.* 407, 415—10 *John.* 185—13    Pruit & Martin
*John.* 222—13 *John.* 141, 256—*Alabama Rep.* 400.                    vs.
                                                                    Lowry,

By Mr. Justice THORNTON :

This was an action of trespass, brought by the defendant
in error, Lowry, (who was a purchaser from one Townsend,
who held by bill of sale from Cottrell,) against the plaintiffs
in error, for forcibly taking a negro from the possession of
Lowry.

The first error assigned, is the admission of Cottrell to
testify in said cause, who was introduced by the plaintiff be-
low. The witness was objected to on the ground of incom-
petency ; and the relation in which he stood to the parties
was, (as was made to appear to the Court) as vendor of the
negro to said Townsend, who sold to Lowry—and as defen-
dant in sundry executions in favor of Pruit, by virtue of which,
the defendant Martin had levied on the negro in question,
and sold to Pruit. As a general proposition, it must be ad-
mitted, that a vendor of property is directly interested in main-
taining the title of such property, when it is brought into con-
test by action against his vendee : his liability over in case of
a recovery, is a direct consequence. In a case however, where
the consequences would be the same to him, let the contest
be decided in either way—as where he had conveyed the
same subject to both litigants ; an equipoise of interest would
render him competent. So in the ordinary case of a trial of
the right of property, under our statute, where the property
is levied on as his own after a sale of it, and his vendee is the
claimant, here it might reasonably be supposed that he would
be interested to subject the property of another to the pay-
ment of his debt, and so interested against the claimant, but
his liability in such event to his vendee, the claimant, would
bring about an equilibrium of interest, and leave him a com-
petent witness. But here there was, as I conceive, an inter-
est inclining the witness to the side of the plaintiff Lowry,
and no conceivable interest to countervail the bias—for the

14

Pruit & Martin
vs.
Lowry.

execution could not be levied again on the same negro, and the amount produced by the sale was a credit upon the execution to which Cottrell would be entitled, no matter how the title might be determined. For this cause alone the judgment would be reversed, and the cause remanded. It is, however, deemed proper to decide now upon the point which is brought to view by the other assignments of error, as it constituted a material portion of the cause on the former trial, and will inevitably arise in its further progress below. The bill of exceptions discloses that the negro sued for, was taken by defendant Martin, by virtue of executions in his hands as constable, issued upon judgments against the witness Cottrell—and that the sale of the negro was made, as the return of the executions shows, by the said Martin. Proof was adduced by the plaintiff to contradict this return in the last particular, showing that the actual exhibition of the negro at the time of sale was by one Milam, and that the crying off, as it is termed, was done by one Caldwell an auctioneer, who was procured by the said Milam—but that Milam acted in the part he bore in said sale, for defendant Martin, and under his sanction. All the instructions given by, and the refusal of that asked for, of the court, evidently proceeded from the position of law assumed to be true—that the sale under the executions, not being made under the immediate direction and cognizance of Martin, but according to the manner disclosed in the testimony above recited, was void, and that neither the justification of the officer Martin, nor the title of Pruit derived from the sale so made, could be maintained. We consider that the sale so conducted was not void, and that the jury should have been so charged. As to any other points raised in the argument from the view above taken, it is unnecessary to respond.

Let the judgment be reversed, and the cause remanded.

The Chief Justice, LIPSCOMB, dissented as to the competency of Cottrell.