## SAWYER *vs.* WARE.

36 675
117 574

[TRESPASS AGAINST SHERIFF FOR SEIZURE AND SALE OF PERSONAL PROPERTY.]

1. *Admissibility of judgment for or against purchaser, as evidence for or against vendor ; competency of vendor as witness for purchaser.*—In an action of trespass against a sheriff, for seizing and selling plaintiff's property under execution against his vendor, a judgment for or against the plaintiff would not be admissible evidence for or against his vendor in another action ; consequently, under section 2302 of the Code, his vendor is a competent witness for the plaintiff.

2. *Competency of transferror as witness for transferree.*—Neither section 2290 of the Code, (which declares the transferror of any contract not a competent witness for. his transferree, "to prove the cause of action,") nor the analogous rule settled by several decisions of this court prior to the Code, applies to a case in which the vendor of a manufactured article is offered as a witness for the purchaser, in an action of trespass by the latter, against the sheriff, for seizing and selling the article under execution against the vendor.

3. *Statute of frauds, as to contract for sale of chattels at price exceeding $200.*—A contract between the lessor and lessee of certain iron-works, to the effect that "the iron made at the furnace should be W.'s [lessor] as fast as it was made, until he was repaid for his advances in money and the rent due," is a contract for the sale of the manufactured iron, and not for the work and labor bestowed in the manufacture; such a contract is within the statute of frauds, (Code, § 1551,) if the amount of the advances and rent exceeds $200; and the agreement for the discharge of the purchase-money does not show such payment as will take the case out of the statute.

4. *Effect of statute of frauds.*—The statute of frauds prevents the enforcement of a contract within its provisions, unless evidenced according to its requirements; but it does not prevent the voluntary execution of such contract by the parties, nor annul it when thus executed.

5. *When title passes to purchaser, as against execution creditor of vendor.* Under a verbal contract for the sale of an article to be manufactured by the vendor, if the contract is within the statute of frauds, the title does not pass to the purchaser until there has been a delivery to him; and if a valid execution against the vendor is in the hands of the sheriff during the interval between the manufacture and the delivery of the article, the lien of the execution is superior to the title of the purchaser.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. JOHN E. MOORE.

THIS action was brought by Horace Ware, against Henry J. Sawyer, to recover damages for the defendant's tortious seizure and sale, under execution against Clabough & Pool, of nine or ten tons of pig-iron, which the defendant, as sheriff, had seized and sold as the property of said Clabough, and which the plaintiff claimed under a contract of purchase from said Clabough. The execution, under which the defendant justified, was issued on the 2d April, 1858, on a judgment which was recovered against said Clabough & Pool, in favor of one John H. Campbell, on the 17th March, 1858; and which came to the hands of the defendant, as sheriff, on the 3d April, 1858. The levy was made by the defendant, under said execution, on the 23d April, 1858; and the property was sold by him, under the levy, on the 1st Monday in June following, and the proceeds of sale applied in satisfaction of the execution.

"On the trial," as the bill of exceptions states, "the plaintiff offered Samuel Clabough as a witness, who was one of the defendants in said execution. The defendant objected to the competency of said Clabough, as a witness for the plaintiff, because he was interested in said suit in favor of the plaintiff; and because, being plaintiff's vendor, it was against public policy.' Said Clabough stated, on his *voir dire*, that the iron in controversy was

made by him at the furnace and iron-works in Shelby county, while in his possession under a lease from the plaintiff; that the terms of said lease were, that he leased said furnace and iron-works from plaintiff, in February, 1858, and hired the negroes, wagons and teams, ore-beds and timber thereunto belonging, for the term of two years, for between eight and ten thousand dollars per annum, payable in equal monthly installments, at the end of each month after the furnace was put in operation; that said furnace and iron-works were out of repair when he leased them, and he did not get them into operation until the 14th April, 1858; that after he had leased said furnace, but before he got the same in operation, plaintiff advanced to him between eight and twelve hundred dollars, in money and provisions, to enable him to put said furnace and iron-works in running order; that these advancements were made upon the agreement, that the iron made at the furnace should be Ware's, as fast as it was made, until he was repaid for his advances and the rent due at the time he (witness) began to operate the furnace; that the lease and hiring were in writing, and notes taken for the amount of the rent and hire, but the contract to let Ware have the iron, in payment of his advancements and the first month's rent, was not in writing; that the iron in controversy was made by him between the 14th and the 23d April, 1858, and was sent by him, at the request of plaintiff, on the wagons and teams hired from plaintiff, to the depot near Columbiana, (which was not on the leased premises,) where it was levied on by the defendant; that he had agreed to let plaintiff have said iron before it was made, and had sent it to the depot at his request, in pursuance to the agreement between them; and that said iron was, therefore, the plaintiff's property when it was levied on. On this showing, the defendant objected to the competency of said witness, on the grounds above stated; the court overruled the objections, and allowed the witness to testify to the same facts before the jury; and the defendant excepted.

"Said witness testified, in addition to the facts above stated, that said iron was worth $30 per ton, and tha

said contract between him and plaintiff was made in good faith. The defendant then read in evidence the record of the judgment under which said levy and sale were made by him, and the execution issued on said judgment, with the endorsements thereon, showing the levy, return, and satisfaction of the execution. This being all the evidence, the court charged the jury, that if they believed the testimony of said witness, and that there was no fraud in the contract between him and plaintiff, then the title to the iron in controversy vested in plaintiff as soon as it was made, and said iron was not subject to levy and sale under said execution; also, that the putting of said iron on the wagons, at the request of the plaintiff, to be hauled to the depot, was a delivery of said iron to the plaintiff, and vested the right to said iron in the plaintiff under said contract, and said iron would not be subject to said execution. To each of these charges the defendant excepted, and then requested the court to charge the jury, in writing, as follows: 'If the jury believe from the evidence that the contract under which the plaintiff claims the property in suit was by parol, and was to the effect that Clabough would deliver to plaintiff as much of the iron first made at the furnace as would be sufficient to indemnify him for advances made to Clabough; and that the payment of the first month's rent or hire was not due until the end of the first month after the furnace was put to work; and that the furnace was not put to work until the 14th April, 1858; and that the property was all in Shelby county, from the time it was made, until it was delivered; and that the execution against Clabough & Pool went into the hands of the defendant, as sheriff, on the 3d April, 1858, and was in his hands until the time of the levy on the 23d April, 1858; and that said iron was delivered to plaintiff, at said depot, in pursuance of said contract; and that said depot was not on the rented premises,—then the lien of said execution attached to the property, and held it in preference to the plaintiff's claim.' The court gave this charge, but with the following written addition: 'If, in addition to what is given in the foregoing charge, the jury find from the evidence that the

plaintiff advanced large sums of money to Clabough, in order to enable him to manufacture iron, upon the understanding, and with the promise on the part of Clabough, that the first iron made by him at said furnace should be the plaintiff's iron; and that the iron levied on had, in pursuance thereof, been set apart for plaintiff, and started for the depot, in pursuance of plaintiff's request and instructions, before the defendant's levy,—then the jury might find for the plaintiff.' To this additional charge, as also to the refusal of the charge as asked, the defendant excepted."

The rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

B. T. POPE, with S. LEIPER, for appellant.

A. J. WALKER, C. J.—A judgment in the suit of a purchaser of personal property, with a warranty of title, is evidence as to the seller, when the title derived from the latter was in controversy, and he had notice of the suit.—Mahone v. Yancey, 14 Ala. 395; Dupuy v. Roebuck, 7 ib. 484. Only two questions, in reference to the plaintiff's title, could arise upon the facts in this case; and those questions are, whether a sale was made; and if it was made, whether it was valid. The former of those questions brings into controversy the making of the sale, and not the quality of the title derived by a sale; and no judgment, consequent upon the decision of that question, could affect the seller. Neither, in our opinion, would a judgment, in a suit where the controlling question was fraud in the sale, be evidence against the seller. The purchaser is not legally entitled to indemnity from his vendor, for injury resulting from a fraud, in which both participated. In a suit against his vendor, the parties would stand in *pari delicto*, and the law would not lend its aid to the purchaser.—Gardenier v. Tubb, 21 Wend. 171; Rea v. Smith, 19 Wend. 294; Seymour v. Beach, 4 Verm. 493; Warner v. Percy, 22 Verm. 155; Bailey v. Foster, 9 Pick. 139. The decision in Nichols v. Patton, (18 Maine, 231,) which is opposed to those above cited,

bases the conclusion, that the vendor is liable on his warranty for injury sustained by the purchaser in consequence of fraud, upon the doctrine, that a fraudulent deed is good between the parties. The inference in that case from the premises is incorrect. Because a deed is valid *inter partes*, it does not follow, that a party may set up his own fraud for the purpose of showing a breach of warranty. The judgment in this case, if against the plaintiff, would not have been evidence against his vendor; and so, if in favor of the plaintiff, it would not have been evidence in favor of the vendor. The witness was, therefore, not incompetent on account of interest, under the rule set forth in section 2302 of the Code.—Harris v. Plant, 31 Ala. 639.

The decisions in Prewit v. Lowry, (1 Porter, 101,) Burns v. Taylor, (3 Porter, 189,) and Holman v. Arnett, (4 Porter, 64,) were made long before the adoption of the Code, and not in reference to the rule now governing the question of incompetency for interest. We shall not inquire, whether the conclusion which we have attained is consistent with those decisions; for we can make no other decision than that which we have announced, without marring the system which we are endeavoring to build up under section 2302 of the Code. We think it much more important to apply with accuracy the rule given by the legislature in that section, than that we should follow the decisions referred to by the counsel.

[2.] Section 2290 of the Code declares the transferror of a contract to be incompetent as a witness for the transferree, suing upon the contract, to prove the cause of action, except in the cases, and under the restrictions therein specified; and before the adoption of the Code, it was held in numerous cases in this State, that the transferror of a chose in action was an incompetent witness for his transferree, to prove the cause of action transferred. Neither under the Code, nor under the rule announced in those cases, was the witness in this case incompetent; for he was not the transferror of a contract or chose in action, but, if he transferred anything, it was a chattel in possession.—Kirksey v. Dubose, 19 Ala. 43; Robinson v. Tipton, 31 *ib*. 595; Clifton v. Sharpe, 15 *ib*. 618;

Sawyer v. Ware.

Powell v. Powell, 10 *ib*. 900; Locke v. Nolen, 11 *ib*. 249; Houston v. Prewit, 8 *ib*. 846; Powell v. Powell, 7 *ib*. 582; Maury v. Mason, 8 Porter, 211, 232.

[3.] The contract as proved was, that the plaintiff should have the manufactured iron as fast as it was made, until he was paid for advances in money and provisions to the amount of eight or twelve hundred dollars, and also for a certain proportion of rent. This was a contract of sale, within our statute of frauds. It is often extremely difficult to distinguish between executory contracts for the sale of articles to be manufactured, and contracts for the labor and skill of manufacturing. The authorities are conflicting, and some of them make distinctions much more nice than practical or useful. Without going into a collation of the authorities, we think we may safely decide, that the contract in this case was for the sale of manufactured iron, and not for the work and labor bestowed in manufacturing it.—Cason v. Cheely, 6 Geo. 554; Browne on the Statute of Frauds, §§ 301–310; Smith on Con. 75, n. 1; 2 Story on Con. 1015, *e e*.

The purchase here is of iron, in value sufficient to discharge the specified debts; and the amount of those debts exceeds two hundred dollars. There was, therefore, a sale of chattels, for a price exceeding two hundred dollars, (Browne on Stat. of Frauds, 313;) and the fifth subdivision of section 1551 of the Code requires such a contract to be in writing, unless the buyer accepts and receives part of the thing sold, or pays a part of the purchase-money. The contract in this case was not accompanied by an acceptance of any part of the chattels sold. The price was to be paid by crediting the debts of the purchaser on the seller. The agreement so to discharge the purchase-money was not a payment. The point is correctly so ruled, in Walker v. Nussey, 16 Mees. & Wels. 302.

[4–5.] The court erred in charging the jury, that the title to the iron vested in the plaintiff as soon as it was made. But as soon as a delivery of the iron, or any part of it, was made, the title vested in the purchaser. The statute of frauds prevents the enforcement of a contract, not evidenced according to its requirements, but does not

prevent the voluntary execution of a contract, or annul it when executed, although it may have been made in a manner not conformable to the statute.—Smith on Contracts, 65; Browne on Statute of Frauds, §§ 114, 115, 116. Therefore, if there was a delivery to the plaintiff, of the iron which is the subject of the controversy, the plaintiff's title would vest; but, if there was a valid execution in the hands of the sheriff of the proper county, against the seller, during the interval between the manufacture of the iron and its delivery, the execution creditor would acquire a lien upon it before the title vested, and the title would be postponed to the lien of the execution, and the sheriff would be justified in levying the execution upon it.

Judgment reversed, and cause remanded.