PRATT *et al.* v. MILLER *et al.*, *Appellants.*

DIVISION ONE.

---

1.  Sale: GOODS, WARES AND MERCHANDISE: STATUTE OF FRAUDS. Where a contract is for articles coming under the general denomination of goods, wares and merchandise, the vendor being at the same time a manufacturer and a dealer in them, as a merchant, or, so dealing, has them manufactured for his trade by others; and the vendee being also a merchant dealing in and purchasing the same line of goods for his trade, of which fact the vendor is aware; the quantity required and the price being agreed upon, and the goods contracted for being of the same general line which the vendor manufactures, or has manufactured for his general trade as a merchant, requiring the bestowal of no peculiar care or personal skill, or the use of material, or a plan of construction different from that obtaining in the ordinary

production of such manufactured goods for the vendor's general stock in trade, the contract is one of sale, and within the statute of frauds, although the goods are not *in solido* at the time of the contract, but are to be thereafter made and delivered. (Rule in *Lee v. Griffin*, 1 Best & Smith, 272, *approved*.)

2. **Statute of Another State:** PRIOR JUDICIAL CONSTRUCTION. The rule, that, in adopting a statute of another state or country, it will be presumed the legislature also adopted its previous judicial construction in the place from which it was taken, considered, and some qualifications of the rule stated.

*Certified from Kansas City Court of Appeals.*

REVERSED AND REMANDED.

*S. P. Sparks* for appellants.

(1) The evidence of plaintiffs precluded any recovery in this case; because it established that all the merchandise embraced in the contract of sale, read in evidence, was not tendered to defendants; the contract of sale was an entirety, and defendant could not be compelled to accept a part of the merchandise. 2 Parsons on Contracts [5 Ed.] p. 652; *Russell v. Nicoll*, 3 Wend. 112; *Sheffield v. Balmer*, 1 Mo. App. 167. (2) The petition counted on a special contract of sale; the proof showed on the part of plaintiff another and different contract with reference to the amount of merchandise, and that that contract had not been fulfilled; nevertheless, the court permitted a recovery for a part of the goods; this was improper in the absence of any acceptance. *Eyerman v. Cem. Ass'n*, 61 Mo. 489; *Yeats v. Ballentine*, 56 Mo. 531; *Davis v. Brown*, 67 Mo. 313. (3) A party cannot set up one cause of action and recover on another and different cause of action. Here the petition alleged a contract for the purchase and delivery of certain specified articles of merchandise. The evidence shows that there were

other and different articles of merchandise in the contract, read in evidence, and showed no tender of the part' not sued for. *Cabanne v. Skinner*, 56 Mo. 357; *Clements v.' Yeats*, 69 Mo. 623; *Murphy v. Bedford*, 18 Mo. App. 279; *Murdock v. Brown*, 16 Mo. App. 548; *Feurth v. Anderson*, 87 Mo. 354. (4) The memorandum in writing made out by plaintiffs' salesman, and read in evidence over defendant's objection, was clearly inadmissible; because it was not the contract sued on; was merely a declaration of a party in interest. *Smith v. Shell*, 82 Mo. 215. (5) The contract relied on for a recovery was obnoxious to the statute of frauds, and the court erred in refusing an instruction in the nature of a demurrer to the evidence. R. S., sec. 2514; *Springer v. Kleinsorge*, 83 Mo. 152. (6) There was no evidence after the exclusion of the copies of the letters and postal card offered in evidence by plaintiffs of the acceptance by the firm of the alleged offer to purchase. It was essential that such acceptance should have been within a reasonable time. (7) The court erred in excluding the testimony of defendants tending to establish a sale by sample with a warranty that the said goods were identical with the sample and evidence that the sample did not fill the warranty. Benjamin on Sales, pp. 848–854.

*S. T. Allen* for respondents.

The statute of frauds does not bar the plaintiffs from their right of recovery on the ground that the order was not signed by the parties to be charged or their authorized agent, but was proved by verbal testimony, undisputed by the defendants. (1) The seventeenth section of the statute of frauds known as 29 Car. II., ch. 3, had received a judicial interpretation by' the English courts before it was embodied into our

Pratt v. Miller.

laws in the Revised Statutes, 1825, determining this question against the claim of the appellants. The interpretation of this act in *Towers v. Osborne*, 1 Strange, 506, was recognized as the rule, from 1724 until the amendment known as Lord TENTERDEN's Act, 9 Geo. IV., ch. 14, sec. 7, was adopted in 1829, and such interpretation became part of the enactment in the revision of our statutes in 1825. *Skouten v. Wood*, 57 Mo. 380; *Skrainka v. Allen*, 76 Mo. 384, 389; *Snyder v. Railroad*, 86 Mo. 613, 618; THOMPSON, J. (dissenting), in *Burrell v. Highleyman*, 33 Mo. App. 183; *Daudt v. Music*, 9 Mo. App. 196; *State v. Mason*, 15 Mo. App. 141. (2) The weight of the authorities is against the claim of the appellants. *Meinicke v. Falk*, 55 Wis. 427; *Crookshank v. Burrell*, 18 Johns. 58; *Cook v. Millard*, 65 N. Y. 352; *Mead v. Case*, 33 Barb. 202; *Cummins v. Bennett*, 26 Mo. 397; *Crockett v. Scribner*, 64 Mo. 447; *Brown v. Allen*, 35 Iowa, 306; *Finney v. Apgar*, 31 N. J. L. 266; *Rentch v. Long*, 27 Md. 188; *Green v. Brookins*, 23 Mich. 52; *Wharton v. Foundry Co.*, 1 Mo. App. 581; *Allen v. Jarvis*, 20 Conn. 38; THOMPSON, J. (dissenting), in *Burrell v. Highleyman*, 33 Mo. App. 183, and cases cited; 3 Parsons on Contracts [7 Ed.] 54; Bishop on Contracts [Enlarged Ed.] secs. 1315, 1316.

BRACE, J.—This is an appeal from the Johnson circuit court to the Kansas City court of appeals, certified here from the latter court on the ground that the conclusion reached by that court is in conflict with the decision of the St. Louis court of appeals in *Burrell v. Highleyman*, 33 Mo. App. 183.

Plaintiffs' cause of action set out in the petition is: That the defendants ordered and requested plaintiffs to manufacture for and furnish to them divers goods, wares and merchandise, being boots and shoes, of which

an itemized account, the price amounting to $265.45, is filed; that plaintiffs accepted said order, manufactured said goods, shipped and tendered them to defendants, who refused to pay for them. The defendants' answer was a denial of the material allegations of the petition, a plea of the statute of frauds; a warranty of quality and breach thereof.

The evidence tended to show that the plaintiffs are wholesale dealers in boots and shoes in the city of Boston, Massachusetts, and that they are either themselves manufacturers or have manufactured for them their stock in trade; that the defendants were retail merchants in Holden, Missouri; that on the thirty-first of May, 1877, the defendants at Holden gave the commercial traveler and solicitor of plaintiffs a verbal order for the bill of goods sued for; that the solicitor made a memorandum of the order in writing, signed it himself, gave a copy to the defendants and forwarded it to the plaintiffs, who thereafter proceeded to have the goods made; that on the eighth day of July the defendants wrote the plaintiffs countermanding the order, and again on the twenty-eighth to the same purport; on the twenty-ninth of July plaintiffs replied to defendants' letter of the eighth, refusing to accept the countermand, and advising the defendants that the goods would be shipped at the time named in the order; and on the thirteenth of August they shipped the goods addressed to the defendants at Holden, Missouri, where they arrived, and defendants refused to receive, or pay for them.

There was no evidence tending to show that the goods were not of the quality contracted for; and the defendants refused to receive the goods, not on account of defect in quantity or quality, but for the reasons assigned in their letters which was a dissolution of their partnership in the first letter, and the excessive drouth

prevailing in the country curtailing trade, in their second.

The court refused an instruction asked for by the defendants in the nature of a demurrer to the evidence and submitted the case to the jury on the following instruction for the plaintiffs:

"The court instructs the jury that if they believe from the evidence that the defendants ordered plaintiffs to make and furnish to them the goods set out in the petition, and that plaintiffs did commence to manufacture said goods on or about the time the order was received, and had a large portion of said goods manufactured on the eighth day of July, 1887, when defendants countermanded said order, and that plaintiffs did manufacture said goods and deliver them to a common carrier directed to defendants at their place of business, then the plaintiffs must recover for the price sued for."

The jury found the issues for the plaintiffs, and from the judgment of the circuit court thereon, for the price of the goods and interest, the defendants appealed to the Kansas City court of appeals, where the judgment of the circuit court was affirmed, but the case certified here for the reason stated.

I.   Section 2514, Revised Statutes, 1879, provides that "No contract for the sale of goods, wares and merchandise for the price of $30 or upwards, shall be allowed to be good, unless the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract, or their agents lawfully authorized."   This statute was first enacted in this state in 1825 (Laws, 1825, p. 214), and, except as to the amount, is almost a literal transcript of the English statute, 29 Car. II., ch. 3, sec. 17.

The question to be determined in this case is, whether the contract in question is a contract for the sale of goods, wares and merchandise, or a contract for work and labor to be done and materials to be furnished. If the former, it is within the statute, and the plaintiffs cannot recover. If the latter, it is not within the statute, and they may. The Kansas City court of appeals, in effect, held that the contract belonged to the latter class and was not within the statute, without discussing the question, but simply citing Browne on the Statute of Frauds, section 308 (*a*), in support of its conclusion.

The whole question as to when a contract is to be held to belong to one or the other of these classes was maturely considered, and ably discussed in *Burrell v. Highleyman*, *supra*, by the St. Louis court of appeals. The majority of the court, in an opinion delivered by ROMBAUER, P. J., holding, in consonance with the ruling in *Lee v. Griffin*, 1 Best & Smith, 272, that "When the subject-matter of a contract is a chattel to be afterwards delivered, then, although work and labor are to be done on such chattel before delivery, the cause of action is goods sold and delivered and the contract is within the statute of frauds." THOMPSON, J., in a dissenting opinion, after reviewing the English cases from the passage of the act in England until the date of its adoption in this state, adhered to the construction placed upon the statute by the English courts prior to the latter date, and by the supreme court of New York in *Crookshank v. Burrell*, 18 Johns. 58, decided in 1820, *i. e.*, "that a contract to deliver at a future day a thing not then existing and yet to be made is not within the statute." Or as stated in the syllabus, "Where work, labor or materials were to be applied to

the chattel in order to put it in condition for delivery to the purchaser, such a contract is not within the statute."

Mr. Benjamin, in his excellent treatise on sales, in entering on a review of the English cases, says: "There have been numerous decisions, and much diversity and even conflict of opinion in relation to the proper principle by which to test whether certain contracts are 'contracts for the sale,' etc., under the seventeenth section, or contracts for work and labor done and materials furnished" (1 Benjamin on Sales [3 Ed.] sec. 108), and concludes by saying (sec. 117): "In reviewing these decisions it is surprising to find that a rule so satisfactory and apparently so obvious as that laid down in *Lee v. Griffin,* in 1861, should not have been earlier suggested by some of the eminent judges who had been called on to consider the subject, beginning with Lord ELLENBOROUGH, in 1814, and closing with POLLOCK, C. B., in 1856. From the very definition of a sale, the rule would seem to be at once deducible *that, if the contract is intended to result in transferring for a price from B to A a chattel in which A had no previous property, it is a contract for the sale of a chattel,* and unless that be the case there can be no sale. In several of the opinions this idea was evidently in the minds of the judges. Especially was this manifest in the decision of BAYLEY, J., in *Atkinson v. Bell,* 8 Barn. & Cress. 277, and TINDALL, C. J., in *Grafton v. Armitage,* 2 C. B. 336; but it was not clearly and distinctly brought into view before the decision in *Lee v. Griffin.* The same tentative process for arriving at the proper distinctive test between these two contracts has been gone through in America, but without a satisfactory result." The result of [that process in America, briefly stated in a general way, may be found in the eighth American and English Encyclopedia of Law, page 707, *et séq*

In New York the rule is that, if the subject-matter of the transfer does not exist *in solido* at the time of making, the contract is for work and labor, but if it does then exist the contract is none the less a contract of sale, that work and labor of the vendor is to be expended upon it before its delivery. This rule is founded upon the decision in *Burrell v. Johnson, supra,* afterwards followed in *Parsons v. Loucks,* 48 N. Y. 17; *Cooke v. Millard,* 65 N. Y. 352, and other cases based on old English decisions such as *Towers v. Osborne,* 1 Strange, 506, and *Clayton v. Andrews,* 4 Burrow, 2101.

In *Cooke v. Millard, supra,* decided in 1875, DWIGHT, C., remarks: "Were this subject now open to full discussion upon principle, no more convenient and easily understood rule could be adopted than that enunciated in *Lee v. Griffin.* It is at once so philosophical, and so readily comprehensible, that it is a matter of surprise that it should have been first announced at so late a stage in the discussion of the statute. It is too late to adopt it in full in this state. So far as authoritative decisions have gone, they must be respected even at the expense of sound principle."

In Maryland in *Eichelberger v. McCauley,* 5 Harris & J. 213, decided in 1821, the rule of the earlier English decisions was maintained, EARLE, J., in delivering the opinion of the court, saying: "Whatever opinion may be entertained of the true meaning of the *seventeenth* section of the statute, the court thinks the distinction between mere contracts of sale of goods, and those contracts for the sale of goods where work and labor is to be bestowed on them previous to delivery, and subjects are blended together, some of which are not in the contemplation of the statute, has too long prevailed to be at this day questioned," citing the English cases of *Clayton v. Andrews, supra,* decided in

1767, and *Rondeau v. Wyatt*, 2 H. Blk. 63, in 1792, in support of the conclusion. In the later case of *Rentch v. Long*, 27 Md. 188, the ruling in *Eichelberger v. McCauley, supra,* was affirmed, BARTOL, J., speaking for the court, saying: "Whatever opinion we might entertain on this question if it were presented for our consideration for the first time, we are not willing to disturb the rule established by" that case.

It will be observed that the rule of construction established in these states is not maintained in the later case upon the ground of sound principle, nor yet upon the ground that the courts were concluded by the early English rulings made before the statute was enacted in those states, but upon the ground that those rulings having received a particular construction by their own courts in *their* early rulings they felt constrained to maintain them to the extent stated, on the principle of *stare decisis.*

In most of the other states where the courts were not thus fettered, while the rulings cannot be said to go the length of that in *Lee v. Griffin,* which is now the settled rule in England, they trend in that direction; as illustrative of this fact the following cases may be cited: *Spencer v. Cone,* 1 Metc. 283; *Gardner v. Joy,* 9 Metc. 177; *Lamb v. Crafts,* 12 Metc. 353; *Goddard v. Binney,* 115 Mass. 450; *Pitkin v. Noyes,* 48 N. H. 294; *Prescott v. Locke,* 51 N. H. 94; *Atwater v. Hough,* 29 Conn. 508; *Finney v. Apgar,* 31 N. J. L. 266; *Cason v. Cheeley,* 6 Geo. 554; *Edwards v. Railroad,* 48 Me. 379; *Sawyer v. Ware,* 36 Ala. 675; *Meincke v. Falk,* 55 Wis. 427; *Brown v. Sanborn,* 21 Minn. 402. In many of these cases rules are laid down for distinguishing a contract of sale from one for work and labor and materials, not always harmonious or entirely consistent with each other, but from which a general rule may be drawn, broadly stated as well in Browne on the Statute of

Frauds as elsewhere, "that if the contract is essentially a contract for the article, manufactured or to be manufactured, the statute applies to it; but if it is for the manufacture, for the work, labor and skill to be bestowed in producing the article, the statute does not apply.    *    *    *    The true question is, whether the essential consideration of the purchase is the work and labor of the seller to be applied upon his materials, or the product itself as an article of trade." Secs. 308, 308a.

And within the general scope of the American authorities this rule may be formulated determinative of the case in hand. That, where the contract is for articles coming under the general denomination of goods, wares and merchandise, the vendor being at the same time a manufacturer, and a dealer in them, as a merchant, or, so dealing, has them manufactured for his trade by others; and the vendee being also a merchant dealing in and purchasing the same line of goods for his trade, of which fact the vendor is aware; the quantity required, and the price being agreed upon, and the goods contracted for being of the same general line which the vendor manufactures, or has manufactured for his general trade as a merchant, requiring the bestowal of no peculiar care, or personal skill or the use of material, or a plan of construction different from that obtaining in the ordinary production of such manufactured goods for the vendor's general stock in trade, the contract is one of sale, and within the statute of frauds, although the goods are not *in solido* at the time of the contract, but are to be thereafter made and delivered.

This rule predicated upon the undisputed facts of this case is within the ruling in *Burrell v. Highleyman, supra,* by the St. Louis court of appeals, and in conflict with the conclusion reached by the Kansas City court

of appeals.   And, while sufficient for the disposition of this case, it is proper to add generally, this being the first time this court has been called upon to pass upon this question directly, that while we adhere to the rulings heretofore made in *Skouten v. Wood*, 57 Mo. 380; *Skrainka v. Allen*, 76 Mo. 384, and *Snyder v. Railroad*, 86 Mo. 613, that in adopting the statute of another state, or of a foreign country, it is to be presumed that the legislature adopted such statute as construed by the courts of the state or country from which such statute is taken.   Yet it is to be remembered that the force of this presumption must always depend upon the extent to which the terms of the statute have acquired a known and settled meaning and a definite application at the time of its adoption in the courts of the jurisdiction from which the statute is taken; and, while such construction has more weight than a construction of the same statute by the courts of the same country subsequent to its adoption in this state, yet it can never amount to more than persuasive authority as to the true intent and meaning of the statute, and the proper application of its terms; or be permitted to prevail against a plain and obvious interpretation of the statute or countervail the general policy of our laws and practice.   Endlich on Interpretation of Statutes, sec. 371.   "The uniform inclination of the courts of this state" is "to give the words of this statute full effect and to refuse to sanction such a latitudinous construction of those words as would give rise to all the evils that the statute was enacted to prevent."   *Delventhal v. Jones*, 53 Mo. 460.

The construction by the English courts of this statute prior to 1825 was not so well known, definite and settled, nor its application so uniform, that we ought to be concluded by the decisions of those courts prior to that date, from adopting a rule brought to light by

further judicial research, and which gives true force and effect to the terms of this statute, as does the rule laid down in *Lee v. Griffin, supra,* and approved by the St. Louis court of appeals in *Burrell v. Highleyman.* The undisputed facts in this case show that this contract was a sale of goods, wares and merchandise within the meaning of the statute, and not being in writing the demurrer to the evidence ought to have been sustained.

The judgment of the Kansas City court of appeals will, therefore, be reversed and the cause remanded to that court where judgment will be entered reversing the judgment of the Johnson circuit court.